STATE EX REL. WYNNE, APPELLANT, *v.* QUINN, RESPONDENT.

(No. 2,765.)

(Submitted February 9, 1910.    Decided February 21, 1910.)

[107 Pac. 506.]

*Cities and Towns—Metropolitan Police Law—Chief of Police—Status—"Policeman"—Statutes—Implied Repeal.*

Cities and Towns—Police Commission Bill—Chief of Police—Status.
  1.  *Held,* that a chief of police, whose duties are the same as those of the ordinary policeman, except that the additional one of supervision and control of the entire force is imposed upon him, is a "policeman," and that, as such, after appointment under the Act placing the police departments of cities under civil service rules (Revised Codes, secs. 3304–3317), he is secure from removal from office in any other manner than that provided in the Act.

Statutes—Implied Repeals.
  2.  Repeals by implication are not favored, and, where two Acts deal with the same subject, effect must be given to both, if possible, but where their provisions are so repugnant as to be irreconcilable, or where the later Act is inconsistent with the first, and shows on its face that it was the intention of the legislature in enacting it that it should be the only law on the subject, the prior statute will be treated as repealed.

Cities and Towns—Police Commission Bill—Chief of Police—Status.
  3.  The provision of section 3308, Revised Codes, that the mayor may suspend a policeman or any officer *under the chief,* for a certain period without hearing or trial, cannot be said to indicate an intention on the part of the legislature to regard the chief officer as in a separate class from other members of the force and to except him from the operation of the Police Commission Act, of which that section is a part.

Same—Power of Mayor—Statutes.
  4.  In so far as the method of appointment of members of a city's police force is concerned, the provisions of the Metropolitan police law (Revised Codes, secs. 3304–3317) are inconsistent with those of sections 3216 and 3250, relative to the powers of the mayor in this regard; the latter sections are therefore repealed by section 3317; and the contention that the saving clause found in the last section, that nothing in the Act contained "shall abridge any of the powers possessed by the

mayor of any city or town under any provision of law or any ordinance," reserved to the mayor the very power taken from him by the enactment, has no merit.

*Appeal from District Court, Silver Bow County; Jno. B. Mc-Clernan, Judge.*

QUO WARRANTO by the state, on the relation of E. W. Wynne, against John J. Quinn, to determine the title to the office of chief of police of the city of Butte. From a judgment for defendant, relator appeals. Reversed and remanded.

*Mr. Wm. E. Carroll, Mr. Edwin S. Booth,* and *Messrs. Kirk, Bourquin & Kirk,* submitted a brief in behalf of Appellant. *Mr. Carroll* argued the cause orally.

In behalf of Respondent, there was a brief by *Mr. John R. Boarman* and *Mr. Edwin M. Lamb,* and oral argument of the cause by the latter.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is a proceeding in the nature of *quo warranto,* by the relator, to determine the title to the office of chief of police of the city of Butte. The complaint contains a full statement of the facts upon which the relator predicates his claim for relief. The defendant interposed a general demurrer, which the district court sustained. The relator having elected to stand upon his complaint, judgment was entered for the defendant. The appeal is from the judgment.

Butte is a city of the first class. It was created under the general laws of Montana authorizing the incorporation of cities and towns. Prior to the passage and approval of the Act of the tenth legislative assembly, commonly known as the "Police Commission Bill" (Laws 1907, Chap. 136, p. 344; Revised Codes, secs. 3304-3317), the police department of the city had been constituted and administered under ordinances of the city enacted

in pursuance of the general laws. Upon the enactment of that law, the mayor of the city constituted the examining and trial board of the police department provided for therein, and thereafter all appointments to places upon the police force were made from among those who had been found upon examination by the board to possess the prescribed qualifications. The relator, having submitted himself to an examination and having received from the board a certificate showing that he was eligible to appointment, was appointed by the mayor a member of the police force and designated to serve in the capacity of chief of police. Having served for more than the probationary term of six months, he was on April 16, 1909, appointed chief of police to serve during good behavior or until by reason of age or disease he should become incapacitated to perform the duties of the office. On May 19, 1909, the newly elected mayor, assuming that the office of chief of police does not come within the provisions of the Act, appointed the defendant to succeed the relator in the office, and the appointment was confirmed by the city council. He thereupon qualified, and on June 4, 1909, assumed the office, and has since that time performed the duties pertaining to it. No charge of any kind was ever preferred against the relator. He has at all times claimed to be entitled to the office under his appointment, and has held himself in readiness to perform the attendant duties. It is alleged that the defendant under his said appointment unlawfully and wrongfully usurped the office and ousted the relator therefrom, and is now holding the same and receiving its emoluments without any right or title thereto whatsoever. The single question submitted for decision is whether the office of chief of police falls within the provisions of the Act of the legislature, *supra,* or whether it is to be filled by appointment by the mayor with the advice and consent of the city council under the law as it stood prior to the enactment of this statute. Incidentally we are confronted with the inquiry whether the chief of police occupies the same official relation to the public and the city as does the ordinary policeman.

The elective and appointive officers of a city of the first class are enumerated in section 3216, Revised Codes, which is found under the title of the Political Code relating to cities and towns. The section provides: " * * * There may also be appointed by the mayor, with the advice and consent of the council, one city attorney, one city clerk, one chief of police, * * * and any other officers necessary to carry out the provisions of this title." By reference to other provisions of the same Title we find that the mayor is authorized to nominate, and, with the consent of the council, to appoint all nonelective officers of the city provided for by the council, except as otherwise provided. (Section 3250.) He is also authorized to suspend any such officer, and, with the consent of the council, to remove him from office. *(Id.)* The duties of the chief of police are enumerated in section 3254. Among others which are purely local in character, in connection with the city government, he is clothed with the powers of a peace officer, and has the powers of a constable in the performance of his duties, except that he may not serve civil process in cases other than those in which the city is a party. He is therefore a policeman or police officer in the same sense as is an ordinary policeman. When the circumstances demand it, he is required to perform all the duties of the ordinary policeman, for, though he has the additional duty of supervision and control of the entire force, this does not lessen or abridge the duties which are enjoined upon all police officers under the general laws of the state. Many of these are enumerated in *State ex rel. Quintin* v. *Edwards,* 38 Mont. 250, 99 Pac. 940, and need not be referred to in detail here. It was pointed out in that case that a policeman or police officer, owing to the peculiar duties cast upon him by law, is not strictly a municipal officer, nor a state officer, but an officer *sui generis,* and that since he does not fall within the class designated as "municipal officers," in section 6 of Article XVI of the Constitution, the legislature did not transcend its power in providing that his term of office shall extend during good behavior or until he shall become incapacitated by age or disease. A decision of the question whether the office

of chief of police falls within the same category was reserved because it was not presented. But we cannot discover any satisfactory reason why, since his duties are the same as those of an ordinary police officer, except as indicated above, he should not be classed as a police officer and his status declared accordingly. To hold that such an officer is not a member of the police force is to hold that a policeman is not a policeman (*State ex rel. Bailey* v. *Edwards, ante,* p. 313, 106 Pac. 703), or, adopting the language of the supreme court of Wisconsin in *State ex rel. Brown* v. *Appleby,* 139 Wis. 195, 120 N. W. 861: "To say that an officer clothed with such powers is not a member of the police force of the city would be contrary to our notion of what the functions of a police officer really are." (See, also, *State ex rel. Hosford* v. *Kennedy,* 69 Conn. 220, 37 Atl. 503; *Brownell* v. *Russell,* 76 Vt. 326, 57 Atl. 103.)

It would have been competent for the legislature to omit mention of any police officer by name, and to have left it to the city council to provide for such police force as it might find to be necessary. The fact that this particular officer is named in the general law, and the rest were left to be brought into existence by the city council, cannot, therefore, be construed as a declaration by the legislature that his relation to the city and the public must be regarded as different from that of any other member of the police force. The question for decision, therefore, resolves itself into the inquiry: Was it the intention of the legislature by the provisions of the police commission bill to put the chief of police upon the same footing as other members of the force with reference to the method of his appointment and term of service, and thus limit and restrict the power conferred upon the mayor and city council by sections 3216 and 3250 *supra?* That this question must be answered in the affirmative is apparent, when we come to examine the comprehensive and sweeping provisions of the Act. For convenience, we refer to the various sections by the numbers given them in the Revised Codes. Section 3304 commands every city to maintain a police department, "which shall be organized and controlled as in this

Act provided.'' Section 3305 casts the general charge and supervision of the department upon the mayor, and then declares: ''He shall appoint all the members and officers thereof. Subject to the provisions of this Act, he shall have the power to suspend or remove any member or officer of the force.'' Section 3306 provides that ''all the members of the police force shall be first appointed for probationary terms of six months,'' and ''thereafter the mayor may appoint the members thereof to hold, and if so appointed they shall hold, during good behavior, or until by age or disease they become permanently incapacitated to discharge their duties.'' In sections 3307 and 3308 are found the requirements touching the appointment of ''the examining and trial board of the police department,'' the qualifications, terms of office, compensation of its members, and its duties touching the examination of all applicants for positions on the force, and its exclusive jurisdiction to hear and determine all charges brought by any person against any member or officer of the police department. In the latter section the power of removal of a member or officer without a hearing or trial by the board is expressly denied. Section 3309 provides how charges must be preferred, and how they shall be tried, and it is only upon a conviction that the power to discipline by removal or suspension or otherwise, vested in the mayor under section 3305, may be exercised as provided in section 3308, except as to the temporary suspension also provided for therein. Under section 3310, any vacancy on the police force must be filled from the eligible list. Section 3311 exempts all members from military or jury duty and from arrest while on duty, and disqualifies them from holding any other office. As indicative of the purpose that the police department shall be free from political influence and control, sections 3312 and 3313 prohibit all the members of it from taking part in political conventions as delegates or otherwise, and from soliciting votes or voting at any political caucus or attempting to influence voters. Section 3315 declares what qualifications all members of the department shall possess. Section 3316 declares the limits within which the compensation of the chief of

police shall be fixed, subject to increase from time to time by the mayor, by consent and approval of the council. The last section (3317) repeals all provisions of law inconsistent with any provision of the Act, with the reservation: "But nothing herein contained shall abridge any of the powers possessed by the mayor of any city or town under any other provision of law or any ordinance."

From this brief *résumé* of the provisions of the Act, we think the conclusion unavoidable that the legislature in enacting it, employing, as it did, many expressions which are exclusive in their meaning, intended to supplant all existing legislation as to the mode of constituting the police departments of cities, and to put all members thereof under civil service rules. It is true that in the different sections we find both expressions "police force" and "police department" used; but it is clear, when we examine the connection in which they are found, that they are used synonymously. For illustration: Under 3308, "all applicants for positions on the police force shall be required successfully to undergo an examination," etc. In the same section it is provided: "It shall be the duty of the board to examine all such applicants as to their legal, mental, moral and physical qualifications and ability to fill the position of member of the police department." Again, in referring to the persons serving on the police force, the various sections mention them indifferently as "members" or "officers" of the "police department" or "police force." Again, in sections 3310 and 3311, providing for the filling of vacancies and making exemptions from military duty, etc., reference is made to members of the "police force"; whereas in the following two sections the prohibition against partisan political activity is addressed to the members of the "police department." Thus it appears, not only that the legislature used these expressions to convey the same idea, but, also, that it did not intend to draw any distinction between an officer of the force or department in a technical sense, and an ordinary policeman or patrolman.

Repeals by implication are not favored. Where two Acts of the legislature deal with the same subject, effect must be given to both, if possible. But if their provisions are so repugnant as to be irreconcilable, or if the later Act is inconsistent in its provisions with the first, and plainly shows upon its face that it was the intention of the legislature in enacting it that it should be the only law on the subject, the prior statute is to be treated as repealed by it. (*Territory ex rel. Largey* v. *Gilbert,* 1 Mont. 371; *Lane* v. *Commissioners of Missoula County,* 6 Mont. 473, 13 Pac. 136; *Dunn* v. *City of Great Falls,* 13 Mont. 58, 31 Pac. 1017; 1 Sutherland on Statutory Construction, sec. 138; 8 Current Law, 1998.) The provision in section 3305 that the mayor shall appoint and remove all the members and officers of the police department, subject to the provisions in the subsequent sections as to examination by the board, the term of probation, the tenure of office, the preferment of charges, and the establishment of them by proof upon a trial by the board is wholly inconsistent with the notion that the mayor, or the council, or both together, may appoint or remove any member of the department in any other manner than that prescribed in the later law. The purpose of the law was "to withdraw the police force, so far as possible, from the control of partisan political influences, and put it under civil service rules; so that, when the members of it were once finally appointed, they might remain in office during good behavior or until they became incapacitated for service. The result sought was improvement in the service, through the experience and proficiency acquired by a long tenure in office, and by a removal of the fear, which was always present under the old statute, that the incoming of a new administration meant loss of office for every member who had not shown himself a zealous partisan during the campaign preceding its election, or during the primaries, conventions, and elections of the prevailing political party generally." (*State ex rel. Quintin* v. *Edwards, ante,* p. 287, 106 Pac. 695.)

Reference is made by counsel for defendant to the following provision found in section 3308: "The mayor, and the chief of

police subject to the approval of the mayor, shall have the power to suspend a policeman or any officer under the chief, for a period not exceeding ten days in any one month without any hearing or trial." And it is made the basis for the contention that the chief is to be regarded as in a separate class from other members of the force, and hence is not a member of it on the same footing as are other officers. It seems manifest that in thus limiting the power of the mayor to suspend the commanding officer of the force it was the purpose to prevent an interim during which the force would be left without a chief officer. But, whatever may have been the purpose, it does not, in view of the other features of the law referred to, operate to except this officer from its provision.

Finally, it is said that the language in which the repealing clause of the statute (section 3317) is couched evinces an intention by the legislature to reserve to the mayor and council the power vested under sections 3216 and 3250 of the Revised Codes, *supra*. The express repeal is of all Acts and parts of Acts inconsistent with this Act. As we have shown, all members of the force are brought within the provisions of the Act, which, in so far as the method of appointment and removal is concerned, are wholly inconsistent with the notion that the mayor and council exercise the power of appointment as provided in the older law. These sections, in so far as they provide for the appointment and removal of police officers, are therefore repealed. The saving clause serves no purpose other than to indicate that the legislature did not intend by the enactment of the law to repeal any existing law or ordinance of any city which was not inconsistent with it.

The judgment is reversed and the cause is remanded to the district court, with directions to overrule the demurrer.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.