WILKINSON, APPELLANT, *v.* LA COMBE, RESPONDENT.

(No. 4,796.)

(Submitted March 14, 1921. Decided April 20, 1921.)

[197 Pac. 836.]

*Election   Contests—County   Offices—Statutes   and   Statutory Construction—Repeal   by   Implication—Commencement   of Contest—Time—Bond—Failure   to   File   in   Time—Dismissal.*

Election Contest—Statutes—Construction.
    1.  Under the rule that where two statutes are enacted at the same time upon the same subject, they must be construed together and effect given to both if possible, *held* that the provisions of the Primary Law (Laws 1913, p. 570) and the Corrupt Practices Act (*Id.*, p. 593), in so far as they refer to election contests, provide a complete and workable system, omitting section 30 of the Primary Law.

Statutory Construction—Repeal by Implication.
    2.  Where two legislative Acts dealing with the same subject are so repugnant as to be irreconcilable, or the later one is inconsistent in its provisions with the first and plainly shows upon its face

---

    1.  Construction together of contemporaneous statutes *in pari materia,* see notes in 18 Ann. Cas. 424; Ann. Cas. 1915A, 186.
    2.  Repeal of statute by implication, see notes in 14 Am. Dec. 209; 88 Am. St. Rep. 272.

[59 Mont. 518.]

that it was intended as the only law on the subject, the prior statute must be deemed to have been repealed by implication.

Election Contest—Statutes Applicable—Repeal by Implication.

3. *Held*, under the above rule (par. 2) that section 30 of the Primary Law making applicable to it the provisions of sections 7234–7249, Revised Codes, thus creating an irreconcilable conflict with relation to election contests of county, township or municipal offices, was impliedly repealed by the Corrupt Practices Act, the latter Act supplying everything to which reference is made by section 30.

Statutory Construction—Duty of Courts.

4. Of two admissible constructions, the courts are not justified in adopting the one which defeats the manifest object of the particular statute.

Election Contest—County Office—Time for Commencing.

5. Under section 40 of the Corrupt Practices Act an election contest of a county office based on the ground that illegal votes had been cast and counted for the contestee in numbers sufficient to change the result must be commenced within forty days after the county clerk delivers the returns to the county board for the purpose of being canvassed.

Same—Failure to File Bond in Time—Dismissal.

6. An election contest is not commenced unless the filing of the bond required by section 48, Corrupt Practices Act, is substantially contemporaneous with the filing of the petition; hence where the petition was filed on November 20 and the last day on which the contest could be commenced was on December 15, but the bond was not filed until December 22, the proceedings were properly dismissed.

*Appeal from District Court, Mineral County; Theodore Lentz, Judge.*

ELECTION CONTEST by R. S. Wilkinson against William La Combe. From the judgment of dismissal, contestant appeals. Affirmed.

*Mr. Harry H. Parsons* and *Mr. Arthur A. Brown*, for Appellant, submitted a brief, and one in reply to that of Respondent; *Mr. Brown* argued the case orally.

*Mr. W. L. Hyde*, for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election held on November 2, 1920, R. S. Wilkinson and William La Combe were rival candidates for

the office of sheriff of Mineral county. La Combe was declared elected, and Wilkinson instituted this contest upon the ground that illegal votes had been cast and counted for the contestee in numbers sufficient to change the result.

The county commissioners as a board of county canvassers met on November 5 and canvassed the returns on the election of sheriff, but did not complete the canvass of the returns on all the offices or questions voted upon, or declare the result until November 12. The contest petition was filed on November 20; the order fixing the amount of contestant's bond was made on November 26 and the bond itself was filed on December 22. By direction of the contestant, the citation was not issued or served until December 27. On motion of contestee the court dismissed the proceeding, and contestant appealed.

In order to reach a consideration of the questions involved [1-4] immediately by this appeal it is necessary to determine first by what rules of law election contests in this state are governed. Sections 82 to 92, inclusive, of the Revised Codes, relate to the contest of the election of a member of the legislative assembly; sections 93 and 94 to the contest of the election of any state officer or district judge, and sections 7234 to 7249, inclusive, to the contest of the election of any county, township or municipal officer. These statutes were enacted many years ago, at a time when nominations were made by party conventions and contests of nominations in the courts were practically unknown. Under that *régime* they constituted a complete and harmonious system of laws applicable to the subject under discussion.

At the general election held in November, 1912, the electors, pursuant to the authority reserved to them by the initiative provision of our state Constitution, adopted two measures— the Primary Election Law (Laws 1913, p. 570), and the Corrupt Practices Act (Laws 1913, p. 593). The Primary Law has to do with the nomination of candidates for public office and, as an incident thereto the settlement of contested

nominations. The Corrupt Practices Act was intended primarily to eliminate corrupt practices in the political campaign which precedes every primary or general election, but it provides also for a contest of any nomination or election.

In so far as these two enactments refer to contests they are *in pari materia* and, since they were enacted at the same time, it is necessary that they be construed together and effect be given to both, if it is possible to do so. (*State ex rel. Hay* v. *Hindson,* 40 Mont. 353, 106 Pac. 362.) The provisions of the Primary Law respecting contests are complete, with the exception that they do not in express terms enumerate the grounds of contest. The provisions of the Corrupt Practices Act relating to the contest of a nomination are likewise complete in themselves, with the exception that they do not indicate the time limit within which such a contest must be instituted, but the designated defect in each is supplied fully by an appropriate provision in the other, so that a complete, workable system is provided by the joint operation of the two measures, and they may thus be construed together and their several provisions harmonized if section 30 of the Primary Law is omitted. By reference, that section makes applicable the provisions of sections 7234–7249, Revised Codes, so far as they are appropriate and not in conflict with the provisions of the Primary Law. A comparison of the two measures discloses that the reference could have been made only for the purpose of preserving a definition of the grounds of contest; but the same grounds of contest found in section 7234 are also found in section 45 of the Corrupt Practices Act. At the time the Primary Law was submitted, it could not be known whether the Corrupt Practices Act would be approved, and we must conclude that the reference was made out of abundance of caution to insure the preservation of the specific grounds of contest in the event the Corrupt Practices Act should fail of approval.

If by the reference in section 30 it was the intention to preserve in full force and effect all of the provisions of sec-

tions 7234–7249, we are confronted with a veritable maze of conflicting and contradictory provisions from which no definite or comprehensible rules can possibly be evolved. Of two admissible constructions, the courts are never justified in adopting the one which defeats the manifest object of the statute involved, and since the Primary Law and the Corrupt Practices Act must be construed together, and since the latter supplies everything to which reference is made by section 30, that section becomes ineffectual for any purpose.

In considering the Corrupt Practices Act so far as it declares the rules applicable to *election* contests as distinguishable from contests of nomination, we are confronted with the inquiry: Does it supersede the several provisions of the Revised Codes above?

In *State ex rel. Wynne* v. *Quinn,* 40 Mont. 472, 107 Pac. 506, this court stated the general rule of statutory construction as follows: "Where two Acts of the legislature deal with the same subject, effect must be given to both, if possible. But if their provisions are so repugnant as to be irreconcilable, or if the later Act is inconsistent in its provisions with the first and plainly shows upon its face that it was the intention of the legislature in enacting it that it should be the only law on the subject, the prior statute is to be treated as repealed by it."

A comparison of the provisions of the Corrupt Practices Act with the provisions of the earlier statutes mentioned discloses that they cover the same subject matter, the later one as extensively as the former; that they are absolutely irreconcilable when considered in their entirety, and that it was manifestly the intention that the later Act should prescribe the only rules upon the subject. We conclude, therefore, that section 30 of the Primary Law is without force or effect; that the several sections of the Revised Codes above are repealed, and this is so even though the Corrupt Practices Act does not contain a repealing clause. (36 Cyc. 1073; *State ex rel. Metcalf* v. *Wileman,* 49 Mont. 436, 143 Pac. 565.) By this,

however, we do not mean to intimate that the later Act deprives a court of general jurisdiction of its authority to inquire into the title by which public office is held, by proceedings in the nature of *quo warranto.* (*State ex rel. Brooks* v. *Fransham,* 19 Mont. 273, 48 Pac. 1.)

Section 40 of the Act above declares that the contest [5] proceedings for the causes mentioned in this petition must "be commenced within forty days after the return day of the election," *etc.* Counsel for contestant insist that the phrase, "return day of the election," refers to the day upon which the canvass is completed and the results declared; but that construction of the language does not appear to be admissible. Section 40 first deals with election contests generally and employs the phrase with reference thereto. It then proceeds: "A contest of the nomination or office of governor or representative or senator in Congress must be commenced within twenty days after the declaration of the result of the election." It will thus be seen that the lawmakers employed one form of expression to characterize one act and a different form of expression to give character to another act. When they desired to refer to the day upon which the results of the election are declared they experienced no difficulty in selecting appropriate words to express their meaning, and the fact that they did so express themselves in the one instance would indicate that in using the phrase "return day of the election" in the other, a different day was intended.

At first blush the phrase would seem to be inappropriate in the connection in which it is used, and its use unfortunate, since it is nowhere defined in the Act; but investigation discloses that it has been in general use in the election laws of these western states for so long a time that, in fairness, it may be said to have acquired a well understood meaning many years before it was incorporated in the laws of Montana.

By an Act approved March 23, 1850 (Laws of California, 1850, Chap. 38, sec. 56), the legislature of California provided that an election contest must be commenced "within

twenty days after the return day of such election," *etc.*, and in *Day* v. *Jones,* 31 Cal. 261, decided in 1866, the phrase "return day of such election" was construed to mean the day upon which the county clerk delivers the returns to the canvassing board for the purpose of being canvassed. The phrase has been brought forward in the laws of California as section 1115, Code of Civil Procedure, and was again given the same meaning in *Carlson* v. *Burt,* 111 Cal. 129, 43 Pac. 583. The same phrase has appeared in the election laws of Utah for many years and has received the same construction there. (*Carbis* v. *Dale,* 23 Utah, 463, 65 Pac. 204.)

Viewed in the light of this history and the connection in which it is employed, we are led to believe that the meaning attached to the phrase by the courts above, is the meaning which it was intended it should be given in this state, and it follows that the time for instituting this contest is to be computed from November 5, and that December 15 was the last day upon which it could be commenced.

The next inquiry is: When is an election contest commenced? [6] Counsel for appellant insist that it is commenced when the contest petition is filed and, since the petition in this instance was filed on November 20, the contest was commenced within the time allowed by law.

Section 48 of the Act above provides: "Any petition contesting the right of any person to a nomination or election shall set forth the name of every person whose election is contested, and the grounds of the contest, * * * . Before any proceedings thereon the petitioner shall give bond to the state in such sum as the court may order, not exceeding two thousand dollars, * * * conditioned to pay all costs, disbursements and attorney's fees which may be awarded against him if he shall not prevail. * * * On the filing of any such petition, the clerk shall immediately notify the judge of the court, and issue a citation to the person whose nomination or office is contested, citing them (him) to appear and answer not less than three nor more than seven days after the date

of filing the petition, and the court shall hear said cause, and every such contest shall take precedence over all other business on the court docket and shall be tried and disposed of with all convenient dispatch. The court shall always be deemed in session for the trial of such cases."

The provision above which defines the duty of the clerk of the court is mandatory. He must immediately, upon the contest petition being filed, notify the judge and issue a citation to the contestee; but by the same section he is forbidden to do anything until the contestant has filed the required bond. Likewise the court is required to hear the contest, giving to it precedence over all other business on the court docket, and try and dispose of it with all convenient dispatch; but the prohibition above is binding upon the court to the same extent as upon the clerk, and no proceedings can be taken upon the petition until the bond is filed. So, likewise, the time within which the contestee may appear must not be less than three days nor more than seven days after the petition is filed, and yet he cannot be brought into court until the bond is filed. To reconcile these provisions requires that the section be construed to mean that the filing of the bond must be substantially contemporaneous with the filing of the petition, and this but carries out the intention of the statute heretofore in force in this state many years prior to the date upon which the Act above was approved. (Sec. 6947, Rev. Codes.)

Paraphrased, section 48 would then read: "Upon filing the petition and bond the clerk shall immediately issue a citation," *etc.* That this is the meaning of the statute seems obvious. Until the bond is filed, no action may be taken upon the petition, or, in other words, the filing of the bond is made a condition precedent to any further action, and, since it is the purpose of the Act to furnish a summary remedy and to secure a speedy trial to the end that the title to public office may be determined at the earliest possible date, we think it is implied clearly that the bond as well as the petition must be filed within the designated period of forty days in order

to constitute the commencement of the contest. (*Wilson* v. *Duncan,* 114 Ala. 659, 21 South. 1017; *Watkins v. Forkner,* 50 Ind. App. 35, 97 N. E. 1020.)

These proceedings suggest the consequences which any other construction of the language of section 48 would countenance. By direction of the contestant the citation was not issued or served until thirty-seven days after the contest petition was filed, and seven days before the beginning of the new term of office involved. If the contest was commenced by filing the petition as the contestant contends, he might have delayed the issuance of the citation practically indefinitely, or at least until the contestee voluntarily appeared and moved dismissal for want of prosecution. If he may postpone giving bond for fifty-two days after the return day, the same or other considerations might justify a delay for three months, or six months, or a year, but in the meantime the contestee would be required to discharge the duties of the office, without receiving any compensation, for section 375, Revised Codes, provides that pending the final determination of the contest, no warrant can be drawn for any part of the salary. The entire spirit and purpose of the law forbid that any such consequence should flow from the abuse of the process provided for the speedy conclusion of election contests and require the construction which we have given to the language of section 48 above.

The trial court properly dismissed the proceedings for the failure of the contestant to file the bond within forty days after the return day of the election.

The motion to dismiss the appeal herein is denied and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and GALEN concur.