STATE ex Rel. NAGLE, Attorney General, Plaintiff, *v.* THE LEADER COMPANY et al., Defendants.

(No. 7,362.)

(Submitted September 28, 1934. Decided October 19, 1934.)

[37 Pac. (2d) 561.]

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Oscar A. Provost,* Special Assistant Attorney General, for Plaintiff, submitted a brief; *Mr. Provost* argued the cause orally.

*Messrs. Freeman, Thelen & Freeman* and *Messrs. Cooper, Stephenson & Hoover,* for Defendants, submitted a brief; *Mr. James W. Freeman* and *Mr. W. H. Hoover* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Original application for writ of *quo warranto,* by the State of Montana on relation of Raymond T. Nagle, Attorney General, against The Leader Company, a corporation, and others.

On July 19, 1893, The Leader Company was duly incorporated and thereafter legally existed for a term of twenty years, at the end of which period its term of existence was duly and legally extended for a like term, expiring July 18, 1933.

The Twenty-second Legislative Assembly provided that section 5916, Revised Codes 1921, should be, and is, amended to read, in part, as follows: "When the term of years for which any corporation organized under the laws of the Territory or State of Montana was incorporated, or its extended term of a corporate existence, has expired, or is about to expire, * * * it may elect to have its term of incorporation extended and continued the same as if originally incorporated." The Act provides the steps to be taken in order to thus extend corporate existence.   (Chapter 7, Laws of 1931.)

In July, 1933, The Leader Company duly complied with all the requirements of the above Chapter, and secured from the Secretary of State his certificate, under date of July 17, 1933, to that effect, which compliance, under the provisions of the law, extended the corporate existence of the company for a term of forty years.

On September 15, 1934, the consent of this court being first had, the Attorney General filed herein a complaint in a

statutory action in *quo warranto*, setting up the facts and challenging the legal existence of the corporation and the exercise of corporate powers and functions by its officers, on the ground that Chapter 7 of the Session Laws of 1931, "as an amendment of said section 5916, or otherwise, or at all, is unconstitutional and void, and of no force and effect." The defendants joined issue on the questions of law thus presented, by answer; briefs were filed and the matter fully presented for determination, on September 28, 1934.

The first question raised is "whether the title of Chapter 7, Laws of 1931, amending section 5916 of the Revised Codes of 1921, is misleading or otherwise violates the provisions of section 23, of Article V of the Constitution of the State of Montana." Hereunder it is argued that the framers of the Act misconstrued section 5916 to apply to corporations seeking to extend their corporate existence, and because thereof, under pretext of amending the section, "introduced a subject entirely foreign to the subject matter of that section." .

Section 5916 was originally enacted as section 400 of the Civil Code of 1895, where it appears without a title; subsequent codifiers have given to it the title, "How corporations may continue their existence under this code." This section provides: "Any corporation formed under the laws of the territory or state of Montana, * * * and still existing, may, at any time within the period limited for its duration, elect to continue its existence under the provisions of this code applicable thereto." It then prescribes the procedure for extension much the same as that prescribed in Chapter 7, above.

The title to Chapter 7 is: "An Act Amending Section 5916 of the Revised Codes of Montana, 1921, so as to Authorize Unliquidated Corporations whose Terms of Corporate Existence have Expired, or may Hereafter Expire, to Extend their Corporate Existence * * * ."

Section 23 of Article V of our Constitution declares that "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed

containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed.''

The Act—Chapter 7, above—clearly contains but one subject: the life of corporations, to which the procedure outlined for accomplishing the purpose is incidental; all parts of the Act have a natural connection and reasonably relate to the legitimate subject of the legislation, and, consequently, the Act does not offend against the constitutional prohibition in this respect. (*Arps* v. *State Highway Commission,* 90 Mont. 152, 300 Pac. 549; *State ex rel. Boone* v. *Tullock,* 72 Mont. 482, 234 Pac. 277; *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *Merchants' Nat. Bank* v. *Dawson County,* 93 Mont. 310, 19 Pac. (2d) 892.)

While the Act deals with two classes of corporations—those whose term has expired and those whose term will shortly expire—the sole subject thereof is as above stated. The power ▮ of the legislature to provide for the extension of the term of the one, or the revival of the other, is not, and cannot be, questioned. Such authority exists. (*Merges* v. *Altenbrand,* 45 Mont. 355, 123 Pac. 21; 1 Fletcher on Corporations, sec. 414.)

Comparing the provisions of the Act with the declarations of the title, it is apparent that the subject of the bill was ▮ ''clearly expressed in its title.'' The only discrepancy between the title and the Act is that the former refers to corporations whose terms have expired ''or may hereafter expire,'' while in the Act the phrase employed is ''about to expire.'' The phrase used in the title may be somewhat broader than that in the Act, but, if so, the constitutionality of the Act is not affected. (*State* v. *Anaconda Copper Min. Co.,* 23 Mont. 498, 59 Pac. 854.)

The principal shafts launched against this Act do not come within the letter of the constitutional inhibition invoked; they are that Chapter 7 in fact repeals the above-quoted provisions

of section 5916, which it assumes to amend, and merely retains the provisions respecting the method of procedure for extending the term of such a corporation as is mentioned in the section, and that, as section 5916 dealt only with bringing those corporations which were created before 1895 under the Code provisions, the subject of the amendment is not germane to the subject of the section it seeks to amend.

In construing an Act amendatory of a statutory provision it is undoubtedly the rule that, when the legislature declares an existing statute to be amended "to read as follows," as was done here, that body evinces the intention to make the new Act a substitute for the amended statute, exclusively; only those portions of the old law repeated in the new are retained, and all portions omitted are repealed. (*State ex rel. Paige* v. *District Court,* 54 Mont. 332, 169 Pac. 1180; *State ex rel. Foot* v. *Burr,* 73 Mont. 586, 238 Pac. 585; *Hale* v. *Belgrade Co.,* 74 Mont. 308, 240 Pac. 371.)

Here, the legislature merely deleted that portion of the law which had become a dead letter by reason of the fact that all corporations organized before the adoption of the Codes of 1895, which had not brought themselves within the Code provisions, had long since passed out of existence, and made the law applicable to all corporations existing under the state law. Chapter 7 still contains the substance of the provisions of section 5916 and enlarges the scope of the section, and the amended section, read in connection with its companion, section 5917, leaves no doubt in the mind but that its purposes include continuing corporate existence under the provisions of Part IV, Division I, of the Civil Code of 1895. The amended Act must be held valid, unless it violates the elementary rule that "if the amendatory Act is not germane to the subject matter of the Act to be amended, then it is not of any effect whatever as an amendment." (*Dolenty* v. *Broadwater County,* 45 Mont. 261, 122 Pac. 919.)

"Germane" means "in close relationship; appropriate; relevant; pertinent." The question as to what is germane to a subject is one of fact, rather than law, and there can be no

clear line of demarcation between those matters which fall within, and those which fall without, the inhibition of the constitutional provision. (*Hale* v. *Belgrade Co.*, above.)

The general subject of section 5916 is corporate existence under the laws of Montana; specifically it was enacted to bring corporations organized before the new law was passed, within its provisions.

An amendment is "a legislative act designed to change some prior and existing law by adding to or taking from it some particular provision." (*Ex parte Haines*, 68 Cal. App. 522, 229 Pac. 984.)

Chapter 7, Laws of 1931, relates to the subject of section 5916, and adds thereto the provisions for extending the term of existing corporations, whether organized before or after the codification of 1895. This added matter is in close relationship to the subject matter of the existing law; it is relevant and pertinent to the subject matter of that law, and would have been an appropriate addition to section 5916 at the time it was enacted. The amendatory Act is, therefore, "germane" to the subject matter of the amended section.

Chapter 7, Laws of 1931, is not vulnerable to the attacks made upon it on constitutional grounds, but was it repealed by Chapter 38, Laws of 1931, which prescribes the procedure for amending articles of incorporation, and repeals all Acts and parts of Acts in conflict therewith?

It will be noted that Chapter 38 specifically amends section 5918, as amended by Chapter 28, Laws of 1925, and amends sections 5920, 5922 and 5923, but does not mention sections 5916 and 5917, considered above. If, then, section 5916, as amended by Chapter 7, above, was repealed by this later Act of the same legislative assembly, the repeal was by implication.

It would seem that, had the Twenty-second Legislative Assembly intended to amend or repeal section 5916 as amended, while it had before it Chapter I of Part III of the Civil Code of 1921, and had in mind the fact that it had already amended that section, and while it was giving special attention to the immediately succeeding sections of the Chapter, it would

have declared its purpose to undo that which it had already done, and would have specifically mentioned section 5916 and its recent action thereon.

The governing rules here are as follows: "If one statute conflicts with a portion of another so as to exhibit an inconsistency, then the inconsistent portion of the previous statute cannot stand, and it is said to be repealed by implication. (*State ex rel. Esgar* v. *District Court*, 56 Mont. 464, 185 Pac. 157; *Wilkinson* v. *La Combe*, 59 Mont. 518, 197 Pac. 836.) But repeals by implication are not favored, and where the two statutes are passed at the same session of the legislature, the presumption against repeal is strong. (*State ex rel. Aachen etc. Ins. Co.* v. *Rotwitt*, 17 Mont. 41, 41 Pac. 1004; *State ex rel. Wynne* v. *Quinn*, 40 Mont. 472, 107 Pac. 506.) The intention of the legislature must be given effect, if possible (sec. 10520; Rev. Codes 1921; *Bennett* v. *Meeker*, 61 Mont. 307, 202 Pac. 203; *Wibaux Improvement Co.* v. *Breitenfeldt*, 67 Mont. 206, 215 Pac. 222), and before the doctrine of implied repeal is applied, the court should make every effort to reconcile the statutes and render every provision of each effective. (*State ex rel. Metcalf* v. *Wileman*, 49 Mont. 436, 143 Pac. 565.)

The alleged conflict between Chapters 7 and 38 of the Laws of 1931 consists in this: Chapter 7, dealing solely with the extension of the term of a corporation whose term "has expired or is about to expire," provides that this action may be taken at any annual meeting of the stockholders, or other meeting called for the purpose, and becomes effective on the vote in favor thereof "by stockholders representing a majority of the capital stock." Chapter 38 provides for the "amendment" of the articles of incorporation of any corporation by a *favorable* vote of the stockholders representing *two-thirds* of the capital stock. In the amendment to section 5918 in this Chapter, among the divers amendments authorized to be made in the articles, appears the provision "by extending its term of existence within the limits provided by law."

Now, if the term of existence of a corporation "has expired or is about to expire," and it is thereupon extended for another and like period of existence, there is no "amendment"

made to the articles of incorporation; it is merely continued in force—imbued with new life. The title to Chapter 38 deals only with "amendment" of articles of incorporation of a corporation whose term "has expired or is about to expire," and if the provision in the Act for "extending the term" has reference to such extension, the Act in this particular would probably be in violation of, and void under, the inhibition found in section 23 of Article V of the Constitution, above discussed.

However, a careful comparison of the two Acts, passed at the same session of the legislature, reveals that this finding may be avoided and the two enactments reconciled by the logical conclusion that the legislature did not intend that Chapter 38 should apply to such an extension of the term of a corporation.

"About" means "almost or approximately; near the time" (Bouvier's Law Dictionary); so when a term is "about to expire," it has nearly expired; has but a short time to go. Having satisfactorily dealt with the subject of a renewal of the life of corporations whose term "has expired or is about to expire," the legislature evidently considered that matter closed and passed to the consideration of other matters affecting corporations other than those mentioned in Chapter 7. We may reasonably conclude that there were brought to the attention of the legislature cases in which corporations might desire to extend the term of their existence, not because that term was about to expire, or for another term of like duration to that specified in the articles of incorporation, but rather for an additional term "within the limit provided by law." For example, while the articles of incorporation must set forth the term for which the corporation "is to exist, not exceeding forty years" (sec. 5905, Rev. Codes 1921), a set of original incorporators might declare the term in their articles to be ten years, and after the expiration of three or four years it might be found advantageous to enlarge the scope of the corporation's activities, change the place of business, the number of directors, or the amount of capital stock, and, with expansion, extend its term of existence "within the limit provided by law," to forty years instead of ten. Such changes, or even the extension alone,

would require an amendment of the articles of incorporation, which could not be made under the provisions of Chapter 7, for the term of the corporation would not be "about to expire." Other situations calling for an extension of the term of existence of a corporation may be readily conceived.

That the legislative intent was that these two Acts should apply to two classes of corporations is further indicated by the very provisions which it is urged conflict. If the term of a going concern has expired, or is about to expire, there is need of haste to remedy the situation in which it is found, and there should be little dissension among the stockholders as to the advisability of taking the step. The legislature, therefore, declared that, as to such action, the vote of a bare majority of the stockholders should control. On the other hand, a change in the articles theretofore agreed upon—an extension of the period of association and liability at a time when abundant opportunity exists for contact with all of the stockholders and for them to give consideration to a step which may materially alter their situation, should be taken only with the consent practically of all concerned; consequently the provision here is that the step may be taken—the articles amended, on the vote of stockholders representing at least two-thirds of the capital stock. Again, a distinction is indicated by the wording of the two Acts. A corporation "may * * * amend" its articles—an active step changing the solemn agreement which creates a legal union of the stockholders—by compliance with the provisions of Chapter 38; the corporation "may elect" to continue that legal union under the provisions of Chapter 7 only when its term of existence "has expired or is about to expire."

This, we think, is the true interpretation of the two Acts, and thereunder there is no conflict between them. It follows that Chapter 7 is not repealed by Chapter 38.

Proceeding dismissed.

Associate Justices Stewart and Anderson concur.

Mr. Chief Justice Callaway and Mr. Justice Angstman absent.