IN RE CLARK'S ESTATE. STATE ET AL., APPELLANTS, *v.* EXECUTORS OF LAST WILL AND TESTAMENT OF WILLIAM A. CLARK, JR., RESPONDENTS and CROSS-APPELLANTS.

(No. 7,707.)

(Submitted September 27, 1937. Decided November 12, 1937.)

[74 Pac. (2d) 401.]

404

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Carl N. Thompson,* and *Mr. John A. Matthews,* Counsel for the State Board of Equalization, for Appellants, submitted an original and reply brief; *Mr. Thompson* and *Mr. Matthews* argued the cause orally.

*Mr. Sydney Sanner, Mr. John A. Fleming* and *Messrs. Corette & Corette,* for Respondents and Cross-appellants, submitted an original and a reply brief, a brief on the questions propounded by the Supreme Court after argument, and a brief on petition for rehearing; *Mr. Sanner* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

These appeals are from the final order of the district court of Silver Bow county determining the inheritance tax due the state in the estate of William A. Clark, Jr., deceased.

The state by its appeal seeks a review of that portion of the order allowing as a deduction the total amount of the federal estate tax paid for the purpose of determining the clear market value of the property of the estate in order to compute the amount of the inheritance tax due the State of Montana.

The executors of the last will and testament of the deceased, and the testamentary trustees for George John Pale, to whom the residue of the estate was left under the terms of the will, have filed their cross-appeal seeking a review of the same order of the district court, and in particular of that portion thereof fixing the tax as to this residue upon the basis that George John Pale was a stranger to the blood, instead of at the rate fixed by the statute for an adopted child.

William A. Clark, Jr., was a resident of Silver Bow county, and died testate on June 14, 1934. His last will and testament was duly admitted to probate in the district court of that county. He left estate partly within and partly without the State of Montana. There is no controversy as to the gross value of the estate. He left numerous legacies, bequests, and devises to individuals and institutions about which there is no controversy.

The two questions here involved may be stated as follows: Was the amount of the federal estate tax a proper deduction in arriving at the clear market value of the property of the estate?

Was George John Pale an adopted child of the deceased,

within the meaning of the applicable statutes? We proceed to the consideration of the first question.

Our first Inheritance Tax Law comprised sections 7724 to 7751 of the Revised Codes of 1907, and it was expressly repealed by a new Act in 1921 on the same subject. (Secs. 10377 to 10400, inclusive, Rev. Codes 1921.) Thus far no mention was made in the inheritance tax laws by our legislatures, when considering deductions, in arriving at the clear market value of estates, of federal estate taxes paid.

In 1923 (Chapter 65, Laws 1923) subdivision 7 of section 10377 of the Revised Codes of 1921 was rewritten, so that, in determining the "clear market value" of property passing by transfers within the purview of the Act, the amount of federal estate tax was included among the deductions. The applicable portion of the amended section reads as follows: "The following deductions, and no other shall be allowed; debts of the decedent owing at the date of death, expenses of funeral and last illness, all state, county and municipal taxes which are a lien against property situated in this state at the date of death, the ordinary expenses of administration, including the commissions and fees of executors and administrators and their attorneys actually allowed and paid, and Federal estate taxes due or paid." (Laws 1923, Chap. 65, sec. 1 (8).)

By the same Act, subdivision 4 of section 10387, Revised Codes of 1921, was also amended so as to read as follows: "Whenever a tax may be due from the estate, or the beneficiaries therein, of any resident or nonresident decedent upon the transfer of any property, when the property or estate left by such decedent is partly within and partly without this state, or upon any stocks, bonds, mortgages, or other securities representing property or estate partly within and partly without the state, any beneficiary of such estate shall be entitled to deduct only a portion of his share of the debts, expenses of administration, federal estate taxes, and of his Montana exemption, equal to the proportion which his interest in the property within the state or within its jurisdiction bears to his entire interest in such estate." (Laws

1923, Chap. 65, sec. 11 (5).) This latter section relates in its entirety to estates partly within and partly without the state, and, in particular, to the procedure to be followed in such estates in the computation and collection of the inheritance tax from them.

Thus, the Inheritance Tax Law clearly continued to allow federal estate taxes as a proper deduction until the amendment of 1927 (Chap. 105, Laws 1927), when the already amended section 10377, supra, was again amended (sec. 1) so that after enumerating the various items properly deductible in arriving at the clear market value of the estate, the amended Act provided as follows: ''But no deduction shall be made for any federal estate inheritance or transfer taxes paid to the United States.'' By the same Act (sec. 2) the provisions of section 10387, which we have quoted above, were further amended by inserting the identical language appearing in section 10377 as it was amended by the same Act, with reference to federal estate taxes.

In 1935 the legislature, by Chapter 186 (sec. 1), again amended what was then section 10377 of the Revised Codes of 1921, as then amended, now section 10400.1 of the Revised Codes of 1935, by inserting in subdivision 8, among the deductions allowable in arriving at the clear market value of the estate, the following language: ''And federal estate taxes due or paid.'' The legislature did not rewrite or expressly amend amended section 10387 of the Revised Codes of 1921, now, as stated above, section 10400.11 of the Revised Codes of 1935, and that section remains unchanged in so far as it attempted to enumerate the deductions, and left the express language of the section in the same condition as it existed after the amendment of 1927.

In Chapter 186, Laws 1935 (sec. 1), the entire section 10400.1 was set out at length, with the amendments incorporated therein. As a part of this chapter a provision is found in section 4 to the effect that ''all Acts and parts of Acts in conflict herewith are hereby repealed.''

408

In may be observed, in passing, that between 1923 and 1935 other amendments to the Inheritance Tax Law were made, but since they in nowise affect its provisions in so far as the question at hand is concerned, we have not referred and will not refer to them, since so to do would tend to confuse rather than to clarify.

Subdivision 4 of section 10400.1, as it was amended in 1935, provides that the tax shall be imposed upon, and the provisions of the Act applied, "to all estates of all decedents who have died since the first day of April, 1921, and which estates remain undistributed on the date when this Act takes effect, to the same extent and in the same manner as though this Act had been in full force and effect at the dates of death of such decedents."

The deceased died since 1921, and his estate has not as yet ▉ been distributed. The amended section (sec. 10400.1) declares that its provisions are applicable both to estates of residents and nonresidents alike. The state contends that the effect of the amendment of 1935 is to divide estates into two classes: (a) Those where all the property of the decedent is within the state, and (b) those where the property is partly within and partly without the state. It contends that if the estate of the decedent falls into the first class, the federal estate tax due or paid may be deducted in arriving at the clear market value of the estate; whereas, if the estate falls into the latter class, such deduction may not be made. Among its contentions, it is asserted that section 10400.47 prevents the provisions of the amendment of 1935 becoming operative against this and all estates where the date of death of the decedent antedated the effective date of the law. Section 10400.47 expressly repealed all then existing inheritance tax laws, but provided that their repeal should in nowise affect any suit, prosecution, or proceeding pending at the time the Act would take effect. The section preserved all existing rights which had accrued under the repealed laws. This section has never been amended or re-enacted since 1923; therefore, it cannot operate to preserve rights in the state or others which arose subsequent to its enactment.

It is further contended that section 10400.1 and section ██ 10400.11 are *in pari materia,* and must be construed together so that both sections may stand. To be *in pari materia,* statutes must relate to the same subject-matter and must not be inconsistent with one another. (*State ex rel. Riley* v. *District Court,* 103 Mont. 576, 64 Pac. (2d) 115; *Register Life Ins. Co.* v. *Kenniston,* 99 Mont. 191, 43 Pac. (2d) 251.) If these two sections are inconsistent, one with the other, they are not *in pari materia.* If one is inconsistent with the other, the later repeals the former by implication. (*State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157; *Wilkinson* v. *La Combe,* 59 Mont. 518, 197 Pac. 836; *State ex rel. Nagle* v. *Leader Co.,* 97 Mont. 586, 37 Pac. (2d) 561.)

We concede the rule to be that repeals by implication are not favored by the courts. (*Box* v. *Duncan,* 98 Mont. 216, 38 Pac. (2d) 986, 987.) We in that case said: "To make tenable the claim that an earlier statute was repealed by a later one, the two Acts must be plainly and irreconcilably repugnant to, or in conflict with, each other; must relate to the same subject; and must have the same object in view. (*State ex rel. Metcalf* v. *Wileman,* supra [49 Mont. 436, 143 Pac. 565]; *Jobb* v. *Meagher County,* 20 Mont. 424, 51 Pac. 1034; *State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157; *Equitable Life Assur. Co.* v. *Hart,* 55 Mont. 76, 173 Pac. 1062.)''

In the older inheritance tax statutes it was said these deductions might not be made. In the later statute the exact contrary appears, as applied, not to some transfers, but as to all. One statute asserts the affirmative, and the other the exact negative; hence they are inconsistent, one with the other, and the later must prevail. (*Wilkinson* v. *La Combe,* supra; *State ex rel. Esgar* v. *District Court,* supra; *State ex rel. Eagye* v. *Bawden,* 51 Mont. 357, 152 Pac. 761; *State ex rel. Wynne* v. *Quinn,* 40 Mont. 472, 107 Pac. 506.) Therefore, the Act of 1935 must prevail unless it is unconstitutional.

Following the conclusion of the argument and during our deliberations after we had arrived at the conclusion thus

far announced, it was suggested by one or more members of this court that if the Act of 1935 was applicable to this estate, and all others where the death of the deceased occurred prior to the operative date of the Act, and such estates were undistributed on that date, the Act, as to all such estates, was violative of section 39, Article V of our Constitution, reading as follows: "No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury."

This constitutional question was neither suggested, briefed, nor argued in the case prior to its submission for decision. Thereupon we submitted two questions to respective counsel, which may be summarized as follows: (1) Does the Act of 1935 violate section 39 of Article V? (2) May this court with propriety in the circumstances decide this constitutional question? Together with these questions there was appended a list of citations from other jurisdictions which might be said to incline to the view that the Act was unconstitutional in so far as it retroactively allowed additional deductions in the computation of the tax, for the consideration of counsel. They have now filed briefs setting forth their arguments on the questions submitted by this court. We now proceed to a consideration of the second question.

Courts have adopted many rules, the observance of which enables them to refrain from passing upon the delicate question of the constitutionality of Acts of law-making bodies. The delicacy of these questions, where one of the three co-ordinate departments of the government is called upon to annul the Acts of another, justifies the attitude of the courts in declining, wherever possible, to pass upon the decision of constitutional questions. This court is now in the situation that if we do not consider this question, the case must be affirmed, at least on the appeal of the state; however, if it is decided that the Act is

unconstitutional, as applied to this estate, then the portion of the judgment from which the state has appealed must be reversed.

If an Act of the legislature is repugnant to the Constitution, the courts have the power, and it is their duty, so to declare. (*State ex rel. Toomey* v. *State Board of Examiners,* 74 Mont. 1, 238 Pac. 316; *Hale* v. *County Treasurer,* 82 Mont. 98, 265 Pac. 6; *Stanley* v. *Jeffries,* 86 Mont. 114, 284 Pac. 134, 70 A. L. R. 166.) We have held that while a constitutional question should be raised at the earliest opportunity, it may be raised for the first time in this court, unless waived, if that be possible. (*State ex rel. Powell* v. *State Bank of Moore,* 90 Mont. 539, 4 Pac. (2d) 717, 80 A. L. R. 1494.)

In the case of *Schwartz* v. *People,* 46 Colo. 239, 104 Pac. 92, 94, the court said: ''The validity of the local option law seems not to have been directly challenged or passed upon in the court below, as being obnoxious to any provision of our state Constitution. However since that question is now urged, and since it is fundamental, the duty of the court to meet and dispose of it seems plain, for it must be that if the law is void a conviction or sentence under it may not be upheld or enforced, and the defendant should go free. If the law upon which the prosecution is based is unconstitutional, then it is no law and there can be no offense for the supposed violation of its terms. Whenever that question is presented and urged, although it be for the first time in a court of review, if it clearly appears, upon the face of the undisputed record, to be fairly involved, manifestly it commands and deserves the consideration and judgment of the court.'' We are mindful that all of these judicial utterances were made when the constitutional question was raised by counsel at least in the appellate court.

All officers of this state, including judicial officers, are by constitutional mandate required to take an oath that they ''will support, protect and defend the Constitution of the United States and the Constitution of the state of Montana.'' (Section 1, Art. XIX.) In the case of *Marbury* v. *Madison,* 1 Cranch. 137, 179, 2 L. Ed. 60, Chief Justice Marshall, after reviewing

412

various provisions of the federal Constitution, said: "From these, and many other selections which might be made, it is apparent, that the framers of the Constitution contemplated that instrument, as a rule for the government of courts, as well as of the legislature. Why otherwise does it direct the judges to take an oath to support it? This oath certainly applies, in an especial manner, to their conduct in their official character. How immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support! * * * Why does a judge swear to discharge his duties agreeably to the Constitution of the United States, if that Constitution forms no rule for his government? If it is closed upon him, and cannot be inspected by him? If such be the real state of things, this is worse than solemn mockery. To prescribe, or to take this oath, becomes equally a crime." In that case the constitutional question was raised by the court itself on behalf of one who never appeared before the court, and it did not have the benefit of the advice or briefs of counsel. (9 A. B. A. J. 109.) Here we have raised the question, but we invited counsel to file briefs and they have accepted our invitation. The constitutional question is decisive on the appeal of the state. If we declined to decide this question, we would be avoiding the performance of a duty. If the Act of 1935 is in fact unconstitutional, to decline to so declare would be a violation of our oaths of office. Therefore, the question must be decided.

"All taxes imposed by" the Inheritance Tax Act "shall be ▮▮▮▮ due and payable at the time of the death of the decedent" (sec. 10400.5, Rev. Codes), except as in the Act "hereinafter provided." The property of a testator, including devisees and bequests, vests in the devisees and legatees at the moment of the death of the testator. (Sec. 7040, Id.; *In re Estate of Deschamps*, 65 Mont. 207, 212 Pac. 512; *In re Connolly's Estate*, 73 Mont. 35, 235 Pac. 408; *Rumney* v. *Skinner*, 64 Mont. 75, 208 Pac. 895;. *Hinds* v. *Wilcox*, 22 Mont. 4, 55 Pac. 355; *Gelsthorpe* v. *Furnell*, 20 Mont. 299, 51 Pac. 267, 270, 39 L. R. A. 170.) Upon the death of an intestate the title to all his prop-

erty, both real and personal, passes to the heirs. (Sec. 7072, Rev. Codes; *Hoppin* v. *Long*, 74 Mont. 558, 241 Pac. 636; *Lamont* v. *Vinger*, 61 Mont. 530, 202 Pac. 769.) In either instance, upon the death, possession of the property passes to the personal representative subject to the control of the district court for administration purposes. (See cases and sections cited, supra.)

The constitutionality of inheritance tax laws has been upheld ██ by this court upon the theory that such law imposes a tax upon the right of privilege of receiving, and not a tax upon the property of the deceased. (*Gelsthorpe* v. *Furnell*, supra; *State ex rel. Rankin* v. *District Court*, 70 Mont. 322, 225 Pac. 804.)

The state of California has a constitutional provision similar to that of section 39, Article V, supra. In the case of *In re Estate of Stanford*, 126 Cal. 112, 54 Pac. 259, 58 Pac. 462, 466, 45 L. R. A. 788, legacies were left to nephews and nieces which were subject to an inheritance tax under the law existing at the time of the death of the deceased. The California courts had theretofore construed the Inheritance Tax Law to be one on the right to receive. An Act was passed by the legislature subsequent to the passing of the deceased, amending the existing Inheritance Tax Law so that legacies to nephews and nieces were exempt from taxation. This amendatory Act by express terms was made applicable to all cases where the property had already passed by will or succession, but where the tax had not been paid. The California court held the amendatory Act invalid under a constitutional prohibition against the donation of public moneys to individuals, the counterpart of which is section 1, Article XIII of our Constitution. However, the court did observe that the enactment of the legislation could not have the effect of discharging the obligation to pay the tax already accrued.

The California court followed the rule of the *Stanford Case* in *Trippet* v. *State*, 149 Cal. 521, 86 Pac. 1084, 8 L. R. A. (n. s.) 1210, where the legislature had repealed the old law and substituted a new one effective after death but before the

collection of the tax; it was held on the authority of the *Stanford Case* that the taxes under the old law prevailed. Both decisions were approved in the case of *In re Estate of Woodward,* 153 Cal. 39, 94 Pac. 242. These decisions have been approved and followed by the same court in the following cases: *In re Estate of Martin,* 153 Cal. 225, 94 Pac. 1053, *In re Estate of Kennedy,* 157 Cal. 517, 108 Pac. 280, 29 L. R. A. (n. s.) 428, *In re Estate of Rossi,* 169 Cal. 148, 146 Pac. 430, and *In re Estate of Potter,* 188 Cal. 55, 204 Pac. 826, under varying facts, but all of them involving the broad question of the right of the legislature to change the Inheritance Tax Law existing at the time of death, and applying a new Act at some time prior to the collection of the tax.

In the case of *McDonald* v. *Tax Commission,* 158 Miss. 331, 130 So. 473, before the payment of the tax in the estate in question the law was amended reducing the rate of taxation. It was asserted that the new rate was controlling. This contention was overruled by the court; it holding that the amendatory statute, as applied to estates then pending, was violative of a constitutional provision similar to our section 39 of Article V.

In the case of *Commonwealth* v. *Paynter's Admr.,* 222 Ky. 766, 2 S. W. (2d) 664, a husband died, leaving his estate to his wife who died within the same year leaving the same property to their children. Thereafter, suit was brought to collect the tax on the wife's estate. Meantime, after the death of both husband and wife, the legislature had enacted a law to the effect that if the same property had been transferred twice within two years, but one inheritance tax should be paid. This law was asserted as a defense. It was held invalid as being violative of a provision of the Constitution of the state of Kentucky similar to our section 39 of Article V.

All of the foregoing decisions either follow, or to some extent rely upon, the case of *In re Stanford's Estate,* supra, wherein it was said: " 'An heir or legatee must take his estate on such conditions as at the time the state may have imposed,' and that subsequent legislation could not affect such vested right; and

this rule, as already held, applies equally to the state, whose right to the fund in question accrued under the Act of 1893."

Counsel assert that these cases are not persuasive on the question at hand in view of the quotation supra, since this court has announced a rule, declared in the case of *Gelsthorpe* v. *Furnell,* supra, and followed in the case of *State ex rel. Rankin* v. *District Court,* supra, which is exactly contrary to that declared by the California court. In our two cases it was held that an inheritance tax may be retroactively imposed upon the beneficiaries of the estates of deceased persons who had died before the operative date of the Inheritance Tax Act, but whose estates had not been distributed. This contention presents a serious question, which, in turn, raises the further questions: Did these two previous decisions announce the correct rule of law, and (2) does the construction adopted by this court amount to a taking of property without due process of law within the Fourteenth Amendment of the federal Constitution, as decided by the Supreme Court of the United States in subsequent cases?

The first question would, perhaps, not be worthy of consideration in view of the long standing of the rule, and our hesitation to overturn the established rule of law, were it not for the existence of the second one. In other words, if our former decisions are not in accord with the decisions of the court which speaks with ultimate authority where the Constitution of the United States is involved, it would be idle for us to follow these decisions however long they may have endured.

We may observe, in passing, that whether the legislature has the power to impose a succession tax, with reference to an undistributed estate of a person who died before the Act imposing the tax was enacted, is a very difficult question and one on which the courts are not agreed and their decisions irreconcilably conflict. (Note, 26 A. L. R. 1461.)

This court in the case of *Gelsthorpe* v. *Furnell,* supra, first decided that the tax was not a property tax, but one on the right to receive. It then decided that the legislature might constitutionally tax retroactively, with reference to undistributed estates. And of this latter question the court said in part:

"Now, clearly, it is not obnoxious to the Constitution to lay a tax on the right to take, even where such right is vested while the estate is subject to the control of the district court to ascertain the exact value of the right, and the possession of an executor for purposes of administration. It is this important restriction to the vested right which respondent seems to have overlooked in the case. The acts of administration are conservatory means directed by the state to ascertain those vested rights. But, although vested, the rights of the legatees 'are subordinate to the conditions, formalities, and administrative control prescribed by the state in the interests of its public order, and are irrevocably established upon its abdication of this control at the period of distribution.' (*Carpenter* v. *Commonwealth of Pennsylvania,* 17 How. 456 [15 L. Ed. 127]; *Succession of Oyon,* 6 Rob. (La.) 504 [41 Am. Dec. 274]; *Succession of Deyraud,* 9 Rob. (La.) 357.)'' The respondents rely upon this language. Let us first examine the authorities cited in support of this statement.

The first case cited is *Carpenter* v. *Commonwealth of Pennsylvania,* 17 How. 456, 15 L. Ed. 127. Similar language is found in the decision to that used by this court. But let us consider the facts under which this language was uttered by the Supreme Court of the United States. The case was decided in 1854, before the adoption of the Fourteenth Amendment to the federal Constitution. Only personal property was involved, and that vested in the personal representative until distribution under the laws of Pennsylvania, which was the jurisdiction imposing the tax. (*Coolidge* v. *Long,* 282 U. S. 582, 51 Sup. Ct. 306, 309, 75 L. Ed. 562.) Hence, there was no question of depriving an heir of property which had vested in him, without due process of law.

The case of *Succession of Oyon,* 6 Rob. (La.) 504, 41 Am. Dec. 274, decided in 1844, held that the Taxing Act under consideration was not retroactive, after which construction the court did express views supporting the language used in the *Gelsthorpe Case.*

The case of *Succession of Deyraud*, 9 Rob. (La.) 357, merely followed the preceding case involving similar facts, the same law, and was decided the same year.

The case of *Prevost* v. *Greenaux*, 19 How. 1, 7, 15 L. Ed. 572, is cited by the court in the *Gelsthorpe Case*, but there the facts were: The state of Louisiana imposed a tax of 10 per cent. on the value of all property inherited in that state by any person not domiciliated there and not a citizen of a state or territory of the United States. The deceased died while this law was in effect. Long subsequent to his death a treaty was entered into between the United States and France (10 Stat. 996, Art. 7) whereby it was agreed that citizens of France should enjoy the possession of property by the same title as citizens of the United States, and "in no case shall they be subjected to taxes on transfers, inheritance, or any others different from those paid" by citizens of the state. A citizen of France claimed the estate and sought to evade the tax, relying upon the provisions of the treaty. The court said: "Now, if the property vested in him at that time, it could vest only in the manner, upon the conditions authorized by the laws of the state. And, by the laws of the state, as they then stood, it vested in him, subject to a tax of ten per cent., payable to the state. And certainly a treaty, subsequently made by the United States with France, could not divest rights of property already vested in the state, even if the words of the treaty had imported such an intention."

Thus it will be observed that the foundation, in so far as cited authorities are concerned, of that opinion, is none too secure on the point under discussion. Much is said in the *Gelsthorpe Case* and in the *Rankin Case*, relative to the inherent power of the state giving it the right to lay the tax, but that power can only be exercised within the limitations of the state and federal Constitutions.

Furthermore, there is this important distinction between the Inheritance Tax Law of 1897 (Laws 1897, p. 83), which was under consideration in the *Gelsthorpe Case*, and all of our Acts commencing with the Act of 1923, the one considered in the

*Rankin Case*; namely, in the old Act the tax was not immediately due and payable on death, but only after an appraisement of the property to be made immediately after death. Therefore, under that Act, the right to the tax did not vest in the state until expiration of the length of time required for making an appraisement after death. By reason of this distinction what we have said with reference to the *Gelsthorpe Case* is not for the purpose of condemning it as an improper decision under the law there considered, but only to demonstrate that it is not a controlling authority on the question now under consideration.

In the case of *State ex rel. Rankin* v. *District Court,* supra, the court had under consideration the Inheritance Tax Law of 1923, which provided that the tax was due and payable immediately upon death; but no mention of any such provision is found in the opinion. It rests in the main, and quotes liberally from, the opinion in the *Gelsthorpe Case.* The effect of this provision, if any, is not discussed in the opinion in the *Rankin Case.* However, the case of *Cahen* v. *Brewster,* 203 U. S. 543, 27 Sup. Ct. 174, 51 L. Ed. 310, 8 Ann. Cas. 215, is cited. There a retrospective tax, prior to distribution, was upheld upon the construction given to the laws of the state of Louisiana by its courts, as against an attack that it violated the Fourteenth Amendment. The interpretation of the law by the state court was based upon a constitutional provision of Louisiana which empowered the legislature to levy and impose an inheritance tax upon all legacies and donations. (*Succession of Levy,* 115 La. 377, 378, 39 So. 37, 5 Ann. Cas. 871, 8 L. R. A. (n. s.) 1180. This provision of the Constitution was in effect at the time of the death, although the Act levying the tax was enacted after the death. Furthermore, the United States Supreme Court, as we shall presently demonstrate, has refused to follow this case as applied to situations now under discussion. (*Coolidge* v. *Long,* supra.)

The courts of other states have taken a contrary view, which decisions have been cited and quoted from with approval by the Supreme Court of the United States in the *Coolidge Case,* supra. In that case the facts may be summarized as follows: On July

29, 1907, a husband and wife transferred real and personal property to trustees, the income from the property to be paid to the grantors during their lifetime, the principal to be divided equally among their five sons upon the death of the survivor, and provided that if any of the sons should predecease the survivor, then such son's share should go to those entitled to take his intestate property under the statute of distribution in force at the death of such survivor. When the declaration of trust was executed, no statute was in effect in Massachusetts under which the succession to the trust property could have been subjected to the tax. Soon after the creation of the trust and long before the death of either of the settlors of the trust, such a statute was enacted. The state court held that the property so settled in trust was subject to the tax under the statute enacted after the creation of the trust. (*Coolidge* v. *Commissioner,* 268 Mass. 443, 167 N. E. 757, 760.) The reasoning of the state court is found in the following quotations from its opinion: ''The five sons of the settlors, who have become the ultimate beneficiaries of the trust, had no power of control individually or collectively over the trust fund while either of the settlors continued to live. They had no possession of it. That was vested exclusively in the trustees. They had no enjoyment of the trust fund, except as a vision of the future. They had no power of disposal of the whole or any part of the corpus of the trust estate. That power was enjoyed by the trustees alone. The extent of their interest was, at most, a remainder subject to be divested upon a condition subsequent with a limitation over upon the happening of that contingency. * * * Under the deed of trust, while either settlor lived the sons had no unrestricted right to receive and to use the proceeds of the property such as came to them upon the death of the last surviving settlor. It is that succession to unrestricted and absolute title, in place of no possession or enjoyment whatever and a contingency as to title, which is made subject to the excise under the statute. The acquisition of the rights which accrued to the five sons on the death of the last settlor was a fundamental change in the nature of their relation to and

interest in the trust. It replaced a contingency with a certainty. Full title, complete and unrestricted in every particular, did not vest in them until that event. By that event the actual transfer of the possession of the trust fund passed under the terms of the deed of July, 1907, from the trustees to the five sons and the full enjoyment thereof as to title and income for the first time became theirs. It seems to us that this change constituted a succession."

The Supreme Court of the United States stated the question involved as follows: "The fundamental question here is whether rights had so vested prior to the taking effect of the tax statute that there was thereafter no occasion in respect of which the excise might constitutionally be imposed. The state court held that the succession was not complete until the death of the survivor of the grantors, and that therefore the tax is valid." It stated its reasons, in part, for its conclusions in the following language: "Upon the happening of the event specified without more, the trustees were bound to hand over the property to the beneficiaries. Neither the death of Mrs. Coolidge nor of her husband was a generating source of any right in the remaindermen. (*Knowlton* v. *Moore,* 178 U. S. 41, 56, 20 Sup. Ct. 757, 44 L. Ed. 969.) Nothing moved from her or him or from the estates of either when she or he died. There was no transmission then. The rights of the remaindermen, including possession and enjoyment upon the termination of the trust, were derived solely from the deeds. The situation would have been precisely the same if the possibility of divestment had been made to cease upon the death of a third person instead of upon the death of the survivor of the settlors. The succession, when the time came, did not depend upon any permission or grant of the commonwealth. While the sons, if occasion should arise, might by appropriate suit require the trustees to account, it is to be borne in mind that the property was never in the custody of the law or of any court. Resort might be had to the law to enforce the rights that had vested. But the commonwealth was powerless to condition possession or enjoyment of what had been conveyed to them by the deeds."

The court made the following observations in the course of its opinion: "No Act of Congress has· been held by this court to impose a tax upon possession and enjoyment, the right to which had fully vested prior to the enactment. * * * This court has not sustained any state law imposing an excise upon mere entry into possession and enjoyment of property, where the right to such possession and enjoyment upon the happening of a specified event had fully vested before the enactment." It quoted and commented upon certain decisions from various state courts, as follows:

"The overwhelming weight of authority sustains the conclusion that the succession in the present case was complete when the deed took effect. *In Matter of Pell's Estate,* 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791, the testator's will gave a life estate in his property to his widow, with remainders over at her death to his nephews and nieces and the issue of any deceased nephew or niece, together with a share to his sister. He died in 1863. The life tenant died December 20, 1899, and at that time all the estates in remainder came into actual possession and enjoyment of the beneficiaries. The Act of March 14, 1899 (Chapter 76, Laws of that year) provided: 'All estates upon remainder * * * which vested prior to June thirtieth, eighteen hundred and eighty-five, but which will not come into actual possession or enjoyment of the person * * * beneficially interested therein until after the passage of this Act shall be appraised and taxed as soon as the person * * * beneficially interested therein shall be entitled to the actual possession or enjoyment thereof.' The court said (page 55 of 171 N. Y., 63 N. E. 789, 791): 'This court and the Supreme Court of the United States have held in numerous cases that the transfer tax is not imposed upon property, but upon the right of succession. It therefore follows that where there was a complete vesting of a residuary estate before the enactment of the transfer tax statute, it cannot be reached by that form of taxation. In the case before us it is an undisputed fact that these remainders had vested in 1863, and the only contingency leading to their divesting was the death of a

remainderman in the lifetime of the life tenant, in which event the children of the one so dying would be substituted. If these estates in remainder were vested prior to the enactment of the Transfer Tax Act, there could be in no legal sense a transfer of the property at the time of possession and enjoyment. This being so to impose a tax based on the succession would be to diminish the value of these vested estates, to impair the obligation of a contract, and take private property for public use without compensation.'

"*Matter of Craig's Estate*. 97 App. Div. 289 [89 N. Y. Supp. 971], (affirmed 181 N. Y. 551, 74 N. E. 1116), involved a similar state of facts. The court said (page 296 of 97 App. Div., 89 N. Y. Supp. 971, 975): 'The underlying principle which supports the tax is that such right (the right of succession) is not a natural one, but is in fact a privilege only, and that the authority conferring the privilege may impose conditions upon its exercise. But when the privilege has ripened into a right it is too late to impose conditions of the character in question, and when the right is conferred by a lawfully executed grant or contract it is property, and not a privilege, and as such is protected from legislative encroachment by constitutional guaranties.'

"In *Hunt* v. *Wicht,* 174 Cal. 205, 162 Pac. 639, L. R. A. 1917C, 961, the court held that a deed delivered by grantor to a third person in escrow, to be delivered to grantee on the death of the grantor, passed a present title to the grantee, the grantee retaining only a life estate; and that the legislature was without power subsequently to impose a succession tax accruing at the termination of the grantor's life estate, simply because the grantee was during the intervening life estate without immediate possession of the property conveyed. The court said (page 209 of 174 Cal., 162 Pac. 639, 641): 'It is the vesting in interest that constitutes the succession, and the question of liability to such a tax must be determined by the law in force at that time. * * * What we have said appears perfectly clear on principle, and is sustained by practically all of the authorities in other states where the question has arisen.' "

The conclusion of the court was as follows: "We conclude that the succession was complete when the trust deeds of Mr. and Mrs. Coolidge took effect, and that the enforcement of the statute imposing the excise in question would be repugnant to the contract clause of the Constitution and the due process clause of our Fourteenth Amendment. We need not consider whether it would also conflict with the equal protection clause."

But it may be said that these cases are distinguishable, since they all involve remainders created by conveyances, and, further, that the court pointed out that the property involved in the *Coolidge Case* had never been in the custody of any court; but the Supreme Court of the United States, in using the language it did, was carefully guarding its statements.

In many and perhaps a majority of the states personal property passes on death to the personal representative, and heir or legatee secures no title until distribution; hence, the heir has no vested interest, and a retrospective tax, imposed before distribution, would therefore deprive him of no vested interest. There can be no doubt as to this conclusion, for we find the court in this very opinion making the following observation: "As the court said in *United States* v. *Jones*, 236 U. S. 106, 112, 35 Sup. Ct. 261, 59 L. Ed. 488, Ann. Cas. 1916A, 316, 'It hardly needs statement that personal property does not pass directly from a decedent to legatees or distributees, but goes primarily to the executor or administrator, who is to apply it, so far as may be necessary, in paying debts of the deceased and expenses of administration, and is then to pass the residue, if any, to legatees or distributees.' (See, also, *Carpenter* v. *Pennsylvania*, 17 How. 456, 462, 15 L. Ed. 127.)" A very able dissenting opinion was filed in the case wherein our case of *Gelsthorpe* v. *Furnell* was commended to the majority of the court as follows: "In a well-considered case, involving precisely the same question as *Cahen* v. *Brewster*, supra, the tax was sustained. (*Gelsthorpe* v. *Furnell*, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170.)"

These two opinions, we think, exhaust the subject. They review every case, both state and federal, that might in anywise

be persuasive or controlling. Subsequent to the decision of the *Coolidge Case,* from which we have quoted so liberally, the Supreme Court of the United States, in the case of *Milliken* v. *United States,* 283 U. S. 15, 51 Sup. Ct. 324, 75 L. Ed. 809, used some language which might be construed as a recession from the opinion in the *Coolidge Case,* although the facts were different. But the court, we find, in the case of *Binney* v. *Long,* 299 U. S. 280, 57 Sup. Ct. 206, 81 L. Ed. 239, adhered to the doctrine of the *Coolidge Case* when the facts were the same.

We have demonstrated that both by statute and decision we are committed to the rule that upon death all of the property of the deceased, whether real or personal, vests immediately in those who are entitled by will or under the law to succeed to it. The right of the state to an inheritance tax likewise vests at the same moment. Neither those entitled to succeed, nor the state, may then know the extent or value of their respective rights. The property of the estate is, during the course of administration, in the custody of the court, but the court gives no title in its decree of distribution to the successors of the deceased, for that is vested in them by the law.

In view of what we have said, and in the light of the decisions of the Supreme Court of the United States since rendered, the holding in the *Gelsthorpe* and *Rankin Cases* may not now be followed as authority for the proposition that the legislature may retroactively tax estates, and the contention of respondents relying thereon must fail. The Act of 1935 must fall as being in violation of section 39, Article V of the Constitution, in so far as it attempts retroactively to permit all to deduct federal estate taxes paid, in determining the clear market value of property for inheritance tax purposes.

Nothing said herein is at war with what was said in the case of *State ex rel. Sparling* v. *Hitsman,* 99 Mont. 521, 44 Pac. (2d) 747, for there all that was involved was the remission of all interest and penalties. Thus far we are not advised of any such question being involved herein, and the Act does not purport to relieve from any such impositions.

Accordingly, the district court was in error in allowing the deduction of the federal estate tax paid. It is demonstrated by what we have said above that the learned district judge who made the order determining the tax, did not have the opportunity of considering the question, the decision of which necessitates the reversal of his order in part.

We pass now to the consideration of the cross-appeal. Approximately eleven years before the death of decedent, Martha Pale was, and continued to be until his death, a servant in his household. Her son, George John Pale, was then seven years of age. She was divorced from the father of her son, John Pale. Thenceforth the deceased supervised and directed the boy's education in private schools and military academies. He spent most of his vacation periods in the home of the deceased. Up to May 15, 1932, the deceased had a natural son of mature years who maintained a separate home from that of his father. The decedent, after the loss of his own son, considered the matter of adopting George John Pale as his son. He discussed these plans with the mother and her son in the fall of 1933, to which both of them consented. Thereafter, George John Pale occupied quarters in the portion of the home of the deceased which he himself occupied. The deceased paid all expenses incurred by him for living, and continued his education. On November 4, 1933, the deceased directed his personal counsel to secure the consent of the boy's father, if necessary, to the proposed adoption. The will of the deceased was dated December 5, 1933, wherein he declared, with reference to George John Pale, ''whose education I have directed and whom I intend to formally adopt as my son.'' In the spring of 1934, all the necessary documents to consummate the adoption had been prepared for approval. Counsel had arranged for the hearing of the matter of the adoption at Butte on June 12, 1934. The deceased, the boy, and his mother left Los Angeles, where they had been sojourning, for Butte on June 10, 1934, and arrived in Butte on June 12 following. The deceased, having become unwell during the journey to Butte, expressed a desire to go to his home at Salmon Lake, where he went and

died on June 14, 1934. No hearing was had on the adoption proceeding. The documents prepared for use at that time were never executed, since they were required to be signed in the presence of the district judge. (Sec. 5861, Rev. Codes.)

The pertinent part of the statute is subdivision 1 of section 10400.2, providing as follows: ''Where the person or persons entitled to any beneficial interest in such property shall be the husband, wife, lineal issue, lineal ancestor of the decedent, or any child adopted as such in conformity with law, or any child to whom such decedent for not less than ten (10) years prior to such transfer stood in the mutually acknowledged relation of a parent, provided, however, such relationship began at or before the child's fifteenth (15) birthday, and was continuous for ten (10) years, or any lineal issue of such adopted or mutually acknowledged child,'' the inheritance tax imposed shall be 2 per cent., etc.

It is not here contended that the deceased ''stood in the mutually acknowledged relation of a parent'' to George John Pale, but that he was in legal effect ''a child adopted as such in conformity with the law'' by the deceased.

The courts have uniformly assumed the validity of executory contracts to adopt (1 Am. Jur., sec. 16, p. 630). Contracts to adopt, not performed by effectual adoption proceedings during the life of the adoptive parent, will, upon the latter's death, be enforced to the extent of decreeing that the child is entitled to such right of inheritance from the estate of the adoptive parent as a natural child would enjoy, where the child in question has fully performed the duties to the adoptive parent, when circumstances require the relief as a matter of justice and equity. (1 Am. Jur., sec. 20, p. 631; *Burns* v. *Smith,* 21 Mont. 251, 53 Pac. 742, 69 Am. St. Rep. 653; *Gravelin* v. *Porier,* 77 Mont. 260, 250 Pac. 823.)

Since the courts will specifically enforce contracts to adopt where they have been performed by the child, at least to the extent of securing to the child the share of the estate which it would have inherited if the adoption were completed, it is argued that George John Pale was adopted in conformity with

law. In 2 C. J., section 27, page 401, it is said: ''In upholding such a remedy, the courts do not hold that the child is entitled to the right of inheritance as an heir. They do not undertake to change the status of either party, but merely to enforce a contract which has been fully performed on one side.''

In the case of *Chehak* v. *Battles,* 133 Iowa, 107, 110 N. W. 330, 333, 12 Ann. Cas. 140, 8 L. R. A. (n. s.) 1130, it is said: ''The authorities upholding the right to specific performance never decree that the child is entitled to the right of inheritance as an heir. They do not undertake to change the status of either party, but merely to enforce a contract which has been fully performed on one side. The distinction was pointed out in *Burns* v. *Smith,* 21 Mont. 251, 53 Pac. 742, 69 Am. St. Rep. 653. 'The question that confronts us here is: Does the plaintiff claim to be an heir of the deceased? Or is not her claim adverse to the law? She is not an heir at law, nor does she claim under or through an heir of the estate. Whatever claim she has, we think, results and comes to her under the contract alleged to have been made with the deceased in his lifetime as set out in the complaint.' '' (Compare 1 Am. Jur., sec. 15, p. 629, and *Jordan* v. *Abney,* 97 Tex. 296, 78 S. W. 486.)

The trial court correctly held that George John Pale was not a child adopted as such in conformity with law, and therefore its determination of the amount of tax due was correct in this respect.

The cause is remanded to the district court of Silver Bow county, with direction to modify the order appealed from in conformity with the views expressed in this opinion, and, when so modified, the order will then stand affirmed. The appellants will recover their costs on this appeal.

ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS:

I heartily concur in the foregoing opinion, but I think it quite appropriate to relate the remarkable circumstances under which the state was about to lose a total sum of $233,994.

The law of 1923 (Chap. 65) provided that, in making the computation of inheritance taxes, the inheritance tax paid to the federal government should be deducted by the state before computing at the fixed legal rate, i. e., the computation was based on the net inheritance. This law was changed by the legislature of 1927 so as to compute on the gross inheritance; that is to say the federal tax was not deducted in making the computation.

Mr. W. A. Clark, Jr., died in 1934, when the law was in this condition. The legislature of 1935 (Chap. 186) undertook to amend this law. The rules of the House then provided that any changes proposed in a bill should be italicized in such bill. This rule was overlooked, or at least not obeyed, in printing the bill, and the attention of the legislature was therefore not directed to this change. The State Board of Equalization was about to compute the rate based on the law of 1935, i. e., upon the net sum to be distributed. As suggested in the opinion, however, the Constitution (Art. V, sec. 39) provides that where a debt has accrued in favor of the state, the legislature has no authority to change the amount, and as Mr. Clark died in 1934, the attempted change by the legislature of 1935 is determined to be unconstitutional as to this estate by the now unanimous opinion of this court. Undoubtedly we have reached a correct conclusion. Unfortunately, this change from a gross to a net base for computation was not understandingly considered by the legislature of 1935. As the law now stands and as affecting all estates since the Act of 1935, the net distributive estate will be the correct base for all inheritance computations until a change is made.

The legislature of 1937 had this matter under consideration and permitted the law to remain as enacted in 1935; that is, the tax to be computed on the net inheritance as a base. If the legislators fairly understand the importance of this issue, it is well, but it is quite unfair to the state and to the legislators if the matter is not thoroughly understood. There are arguments both for and against; but it seems quite fair to state that when the law was changed in 1935, the legislators did not

understand just what an important change they were making. The clerks or legislators responsible for the failure to italicize the changes made in the Act of 1935 should be severely criticized for the error, especially if it were intentional.

ON MOTION FOR REHEARING.

(Filed December 20, 1937.)

MR. JUSTICE ANDERSON delivered the opinion of the court.

The cross-appellants herein have filed a petition for rehearing, to which appellants have filed objections, and in addition now for the first time seek to have this court modify the order determining the tax with respect to the rate of interest on the amount of the tax.

The cross-appellants argue that our construction of the in- ▮▮▮▮▮▮▮ heritance statutes in our original opinion, to the effect that the amount of the federal estate tax paid may not be deducted, and that the amount of the inheritance tax shall be computed in accordance with this construction, renders the Act unconstitutional, in that a tax is imposed upon the right to receive something which in fact is never received; namely, the amount of property or money necessary to pay the federal tax estate.

Both the state tax and the federal tax are imposed at the moment of death. What was said by the United States Supreme Court in the case of *Frick* v. *Pennsylvania*, 268 U. S. 473, 45 Sup. Ct. 603, 608, 69 L. Ed. 1058, 42 A. L. R. 316, is pertinent here. That court declared: ''With this · understanding of the power in virtue of which the two taxes are imposed, we are of opinion that neither the United States nor the state is under any constitutional obligation in determining the amount of its tax to make any deduction on account of the tax of the other. With both the matter of making such a deduction rests in legislative discretion. In their present statutes both direct that such a deduction be not made.

It is not as if the tax of one, unless and until paid, presented an obstacle to the exertion of the power of the other. Here both had power to tax and both exercised it as of the same moment. Neither encroached on the sphere or power of the other. The estate out of which each required that its tax be paid is much more than ample for the payment of both taxes. No question of supremacy can arise in such a situation. Whether, if the estate were not sufficient to pay both taxes, that of the United States should be preferred (see *Lane County* v. *Oregon*, 7 Wall. 71, 77, 19 L. Ed. 101), need not be considered. That question is not involved here. The objection that when no deduction is made on account of the federal tax the state tax becomes to that extent a tax on the federal tax and not a tax on the transfer is answered by what already has been said. But by way of repetition it may be observed that what the state is taxing is the transfer of particular property, not such property depleted by the federal tax. The two taxes were concurrently imposed and stand on the same plane, save as the United States possibly might have a preferred right of enforcement if the estate were insufficient to pay both.''

The contention of counsel would be pertinent here if our tax were a tax upon the property instead of upon the right to receive. The inclusion of the property or money which is consumed in the payment of the federal estate tax in computing the tax is not imposing a tax upon the right to receive that particular property, but is the imposition of the tax upon the right to receive the property which the beneficiaries actually receive. The contention cannot be sustained.

The cross-appellants further argue that they should be relieved from the payment of interest on the augmented sum which they are required to pay as a result of the decision of this court, relying upon our decision in the case of *State ex rel. Sparling* v. *Hitsman,* 99 Mont. 521, 44 Pac. (2d) 747. We there held that the legislature might, without violating section 39 of Article V, Constitution, relieve taxpayers of impositions by way of penalties and interest due the state. But no such relief has been here attempted by the legis-

lature in any statute applicable to this case, and counsel have not invited our attention to any such statutory provision.

The other contentions made on behalf of the cross-appellants are disposed of to our satisfaction in the original opinion, and accordingly their petition for rehearing is denied.

Now with reference to the request on the part of the state, ▮▮▮ the only authority which the Attorney General has seen fit to cite in support of this request is section 10400.6, Revised Codes. This section provides that if the tax is paid within eighteen months, a discount of 5 per cent. will be allowed. If the tax is not paid thereafter, interest shall be at the rate of 10 per cent. unless, ''by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, such tax shall not be determined and paid as herein provided, in which case interest at the rate of six per cent. shall be charged upon such tax from the accrual thereof until the cause of such delay is removed, after which ten per cent. shall be charged, provided that litigation to defeat the payment of the tax shall not be considered necessary litigation.''

The trial court provided in its judgment that interest should be paid at the rate of 6 per cent., and found that necessary litigation had ensued in conformity with the statute.

In the first place, the record is silent as to whether a bond was filed in conformity with section 10400.9. If such bond was filed, interest on the tax would be payable at the rate of six per cent. Secondly, if the State of Montana was dissatisfied with the order determining the tax, the state has failed to avail itself of the right to apply for a rehearing in the district court within sixty days, pursuant to the provisions of section 10400.28 on this ground. Furthermore, and apart from these omissions, the statute itself is not reasonably susceptible of the construction for which the state must contend if the relief requested is to be granted, unless a construction which leads to an absurdity is adopted.

Reliance is placed upon the quoted portion of the above ▮▮▮ section, and particularly upon the last proviso to the effect that litigation to defeat the payment of the tax shall not

be considered necessary litigation. We think this contention has been most effectively disposed of in the case of *In re Estate of Irwin,* 196 Cal. 366, 237 Pac. 1074, 1078, wherein the court said: "If the proviso be construed to mean 'any or all litigation,' it would necessarily follow that even a litigant who had successfully proved in court his contentions as to the invalidity of a tax imposed would be liable for the imposition of the interest of 10 per cent. as a penalty for submitting his objections to a court for adjudication, for even successful litigation would be 'litigation to defeat the payment of a tax.' Such a result would obviously be an adsurdity."

The Arkansas supreme court has reached the same conclusion in the construction of a similar statute, in the case of *State v. Lane, Executor,* 134 Ark. 71, 203 S. W. 17. (See, also, *In re Duncan's Estate,* 119 Wash. 426, 206 Pac. 1.)

We approve the construction of this statute as announced by the California court in the case of *In re Estate of Irwin,* supra, wherein it is further said: "The state is, of course, interested only in securing the payment of taxes rightfully due, and it cannot have been the intention of the legislature to coerce, by the threat of a heavy penalty for a resort to the courts, the payment of taxes to which the state may not be rightfully entitled. The result undoubtedly intended to be accomplished by the enactment of the proviso was the prevention of unjustified delay in the payment of taxes rightfully due the state by reason of unnecessary litigation. This result would be accomplished by limiting the imposition of a penalty for resort to the courts to litigation which was unjustified, leaving it for the court to decide in each instance whether or not the litigation was justified. If the litigant be successful, the court necessarily would hold that the litigation was not unnecessary and unjustified. If the litigant be unsuccessful, the court could determine in each case whether the grounds of opposition were or were not meritorious. Such a construction of the proviso is much more fair and just to both sides of a controversy involving a tax than the strict and harsh construction insisted upon by the appellant."

The construction contended for would impose a penalty of 4

per cent. interest per annum upon anyone who resisted by litigation any portion of the tax sucessfully; the additional penalty being computed upon any part of the tax which would be paid. Under such a construction the law would violate the spirit, if not the letter, of section 6, Article III of the Constitution, prohibiting the sale of justice. The request of the state must be, and is, denied.

ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS:

I dissent from the opinion of the majority in the above matter, since section 10400.6, Revised Codes, provides: "If such tax is paid within eighteen months from the accruing thereof, a discount of five per cent., shall be allowed and deducted therefrom. If such tax is not paid within eighteen months from the accruing thereof, interest shall be charged and collected thereon at the rate of ten per cent. per annum from the time the tax accrued; unless by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, such tax shall not be determined and paid as herein provided, in which case interest at the rate of six per cent. shall be charged upon such tax from the accrual thereof until the cause of such delay is removed, after which ten per cent. shall be charged, *provided that litigation to defeat the payment of the tax shall not be considered necessary litigation.* In all cases when a bond shall be given under the provisions of section 10400.9, interest shall be charged at the rate of six per cent. after one year from the date of death, until the date of payment thereof."

This is a very clear invitation to pay the tax claimed by the state, and if it should later be determined that the tax is not due to the state, the money will be refunded. Failure to pay entails a chance, just as in a suit on a note if contested, until final determination interest will be charged on the total amount finally found due on the note during the entire litigation. If part of the debt is admitted, payment of such part is necessary to stop interest on that part. The same privilege prevails here.

See section 10400.8, which says: "Any person from whom such tax is or may be due may make an estimate of and pay the same to the clerk of court, who shall receipt therefor, at any time before the same is determined by the court, and *shall thereupon be relieved from any interest or penalty upon the amount so paid* in the same manner as if the tax were then determined. The money shall be paid to the clerk of the district court who must deposit same with the county treasurer for credit to the clerk of the district court's deposit or trust fund until the correct amount of the tax has been determined. As soon as the correct amount of inheritance tax has been determined, any excess so paid shall be refunded to the person so paying or entitled thereto by such clerk of court out of said trust fund, and the county treasurer shall receipt for the amount of the inheritance tax so determined by the court."

The express proviso of section 10400.6, quoted above, is directly applicable in this case. The executors claimed a reduced rate, first, by reason of the fact that Pale was an adopted son, which, if allowed, would reduce the tax by the sum of $223,914.39; and, second, a decrease in the tax of $233,914.39, because of the fact that $730,982.42 had been paid to the federal government as an estate tax. This court has now found against both contentions, and, no deposits having been made to cover either of these claims until February 15, 1937, interest at 10 per cent. was chargeable until such date. Therefore, the rate of 10 per cent. should apply on both sums from the date of death on June 14, 1934, until paid, as provided by section 10400.6, instead of interest of 6 per cent., as found by the majority opinion; that is, the rate of 10 per cent. should be charged on $223,914.39, from June 14, 1934, until February 15, 1937, which, computed, amounts to $45,564.89, and from that time to the present at the rate of 10 per cent., when the above deposits were made. In addition, the amount of tax due because of the disallowance of the federal estate tax as a tax basis deduction, to-wit, $233,914.39, should be chargeable with interest at 10 per cent. from the date of death until it shall finally be paid. Figured to December 27, 1937, such interest will amount to

$82,714.72. The interest, at 10 per cent. on the two amounts paid February 15, 1937, calls for an additional payment of $45,564.89. Thus this estate should pay an additional interest penalty, figured as above, of $128,279.61, which difference is worthy of the careful consideration of all members of the court.

However, since preparing the above, my attention is directed to the character of the objections raised by the state and approved by the majority of this court to the 10 per cent. rate. It will be noted that the lower rate is premised upon a law passed eight months after the death of Clark. The title of the Act gives no hint of the large reduction in this inheritance tax. Indeed, the title would lead a casual reader to assume that the tax was intended merely to cover an enlarged number of inheritance taxpayers, instead of a reduction of the amount to be paid by this estate in particular.

The text of the Act reads: "This Act shall apply to all estates of all decedents who have died since the first day of April, 1921, and which estates remain undistributed on the date of this Act." (Laws 1935, Chap. 186, p. 404, sec. 1.) The exception allowing deduction for federal inheritance taxes paid is tucked away to the Act in a very unobtrusive manner. No attention is directed to this very important change, and it is safe to say that very few of the legislators sensed the important contribution they were making to this millionaire stranger to the Clark family. The legislators who may have been aware of this generous contribution probably had little regard for the taxpayers of the state who suffered the loss of this tax amounting to over a third of a million dollars as this court was at first disposed to grant, and as finally settled grants, this young man the princely deduction of over $128,000.

It is suggested that the rate of 10 per cent. for delayed payments of inheritance taxes is the correct rate, but the district court improperly fixed the rate at 6 per cent., and no appeal from that portion of the order was made to this court; therefore, the order for the 6 per cent. rate must continue. That argument would be good if it did not conflict with section 39, Article V of the state Constitution, which reads: "No obliga-

tion or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury.''

Any legislative Act providing for an appeal would be in contravention of this constitutional provision, and, therefore, ineffectual to foreclose the consideration in the case before us. The debt in favor of the state cannot be *"remitted, released or postponed, or in any way diminished by the legislative assembly."* Any code of procedure by which failure to proceed in a certain specified manner in this court would contravene this constitutional inhibition. It is not now too late for this court to raise, of its own motion, the disputed question of the correct interest rate, and any order made by this court reducing the debt would be in disregard of the last-quoted constitutional provision.

Every lawyer in the state should carefully weigh the law laid down by the supreme court in this case, and make suggestions to the legislators from his particular section so that the next legislature may intelligently clarify the law as it applies to the large estates of the future.